UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRYAN K. PHILLIPS, MICHAEL A. TONEY, GEOFF SHUCK, and JESSICA PHILLIPS, <br><br> Plaintiffs <br><br> vs. <br><br> BANK OF INDIANA, NATIONAL ASSOCIATION, FRANK D. NEESE, ALBERT R. "JACK" JACKSON, III, TERRY FULK, RICHARD BUSH, JAY C. REYNOLDS, JAY SEEGER, MERRILL M. WESEMANN, M.D., MICHAEL ENNIS, PETER DVORAK, DALE CONRAD, JAMES SPIROS, DANIEL COOK, RICHARD VONDERHAAR, JEFF SALESMAN, and KURT GORE, <br><br> Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> CAUSE NO. 2:13-cv-412 |

**COMPLAINT FOR DAMAGES**

Plaintiffs, Bryan K. Phillips, Michael A. Toney, Geoff Shuck, and Jessica Phillips, (hereinafter jointly referred to as "Plaintiffs"), by their counsel, and for their Complaint for Damages against the Defendants, Bank of Indiana, National Association, Frank D. Neese, Albert R. "Jack" Jackson, III, Terry Fulk, Richard Bush, Jay C. Reynolds, Jay Seeger, Merrill M. Wesemann, M.D., Michael Ennis, Peter Dvorak, Dale Conrad, James Spiros, Daniel Cook, Richard Vonderhaar, Jeff Salesman and Kurt Gore, state as follows:

1

**Parties**

1.      Plaintiff, Bryan K. Phillips, is an individual residing in Vigo County, Indiana. Said Plaintiff is a Stockholder, Bondholder and Creditor of Indiana Bank Corp.

2.      Plaintiff, Michael A. Toney, is an individual residing in Vigo County, Indiana. Said Plaintiff is a Stockholder, Bondholder and Creditor of Indiana Bank Corp.

3.      Plaintiff, Geoff Shuck, is an individual residing in Vigo County, Indiana. Said Plaintiff is a Stockholder of Indiana Bank Corp.

4.      Plaintiff, Jessica Phillips, is an individual, residing in the State of California.  Said Plaintiff is a Bondholder and Creditor of Indiana Bank Corp.

5.      Bank of Indiana, National Association (hereinafter "Bank of Indiana"), was at all times relevant hereto a National Banking Association having its principal office located in Dana, Vermillion County, Indiana.  Bank of Indiana became inactive as of October 28, 2013 and a majority of its assets have been sold to First Farmers Bank and Trust Company of Converse, Indiana.  At all times relevant hereto, Bank of Indiana was engaged in interstate commerce.

6.      At all times relevant hereto, Bank of Indiana was a wholly-owned subsidiary of Indiana Bank Corp., an Indiana corporation formed under the Bank Holding Company Act. Indiana Bank Corp. is currently in bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana.

7.      Upon information and belief, Defendant, Frank D. Neese (hereinafter "Neese") was a director of both Bank of Indiana and Indiana Bank Corp., and also served as the Chairman of the Board of both entities.  Neese is a citizen of the State of Indiana.

8.      Upon information and belief, the Defendant, Albert R. "Jack" Jackson, III

(hereinafter "Jackson"), was a director of both Bank of Indiana and Indiana Bank Corp., and served as Chief Financial Officer and/or Vice President or both entities.  Jackson is a resident of the State of Indiana.

9.      Upon information and belief, Terry Fulk (hereinafter "Fulk"), was a director of Bank of Indiana and Indiana Bank Corp. and was a director of the Bank of Indiana and Indiana Bank Corp. and was also the Chairman of the Board of both entities, following the resignation of Neese.  Fulk is a citizen of the State of Indiana.

10.     Upon information and belief, Richard Bush (hereinafter "Bush"), was a director of Bank of Indiana and Indiana Bank Corp., and was Chairman of the Board of both of said entities, following the resignation of Fulk.  Bush is a citizen of the State of Indiana.

11.     Upon information and belief, Defendant, Jay C. Reynolds (hereinafter "Reynolds"), was a director of Bank of Indiana and Indiana Bank Corp. and also served as an officer of both of said entities.  Reynolds is a citizen of the State of Indiana.

12.     Upon information and belief, Defendant, Jay Seeger, (hereinafter "Seeger") was a director of Bank of Indiana and Indiana Bank Corp., and also served as Chairman of the Board of said entities.  Seegar is a resident of the State of Indiana.

13.     Upon information and belief, Merrrill M. Wesemann, M.D. (hereinafter "Wesemann"), was a director of Bank of Indiana and Indiana Bank Corp.  He is a resident of the State of Indiana.

14.     Upon information and belief, Michael Ennis,  (hereinafter "Ennis"), was a director of Bank of Indiana and Indiana Bank Corp.  He is a resident of the State of Indiana.

15.     Upon information and belief, Peter Dvorak, (hereinafter "Dvorak"), was a director

3

of Bank of Indiana and Indiana Bank Corp.  He is a resident of the State of Florida.

16.    Upon information and belief, Dale Conrad. (hereinafter "Conrad"), was a director of Bank of Indiana and Indiana Bank Corp.  He is a resident of the State of Indiana.

17.    Upon information and belief, James Spiros,  (hereinafter "Spiros"), was a director of Bank of Indiana and Indiana Bank Corp.  He is a resident of the State of Illinois.

18.    Upon information and belief, Daniel Cook,  (hereinafter "Cook"), was a director of Bank of Indiana and Indiana Bank Corp.  He is a resident of the State of Indiana.

19.    Upon information and belief, Richard VonDerHaar,  (hereinafter "Vonderhaar"), was a director of Bank of Indiana and Indiana Bank Corp.  He is a resident of the State of Indiana.

20.    Upon information and belief, Jeff Salesman (hereinafter "Salesman"), was the Executive Vice President of Bank of Indiana for the period from June 2007 through November, 2012.  He is a resident of the State of Indiana.

21.    Upon information and belief, Kurt Gore (hereinafter "Gore"), was a Vice President of Bank of Indiana at relevant times hereto.  He is a resident of the State of Indiana.

## Jurisdiction and Venue

22.    This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. Section 1331 as this case arises under Defendants' violations of the Racketeer Influence and Corrupt Organizations Law, 18 U.S.C. Section 1961, et seq. (RICO).  Jurisdiction over the Plaintiff's state law claims is provided by 28 U.S.C. Section 1367.

23.    Venue is proper in this judicial district pursuant to 28 U.S.C. Section 1391(a) in that a majority of the Defendants reside in this judicial district and a substantial part of the events

or omissions giving rise to this action occurred in this judicial district.  This matter is properly

brought in this division pursuant to 28 U.S.C. Section 94(b).

### Facts

24.     Indiana Bank Corp. was incorporated on August 26, 2005, for the purpose of

acquiring The First National Bank of Dana, which had its principal place of business located in

Dana, Vermillion County, Indiana.

25.     On or about October 14, 2005, Indiana Bank Corp. issued its Offering Circular

offering up to two million shares of the Common Stock of Indiana Bank Corp., which offer was

to terminate on or before December 15, 2005.

26.     The Offering Circular set out in detail the operating plan of Indiana Bank Corp.

Further, the Offering Circular stated that Indiana Bank Corp. had assembled its management

team that had a "... strong banking and business experience in the Bank's Service Area."  The

Circular represented that Dan J. Fehrenbach, was and/or would be the Chairman of the Board,

President and Chief Executive Officer of Indiana Bank Corp.  The Circular further provided that

Jay C. Reynolds, was or would be the Executive Vice President of Indiana Bank Corp.

27.     That Plaintiffs received the Offering Circular and relied upon the statements

contained therein - - and in particular the representations regarding Indiana Bank Corp.'s

management team and its experience in the Bank's service area - - in determining to acquire their

original stock in Indiana Bank Corp. on or before the offering date.

28.     That the Plaintiffs' original stock of Indiana Bank Corp. was issued during or

about May of 2006.  At the time said stock was issued to Plaintiffs, Neese had assumed the

position of Chairman of the Board of both Indiana Bank Corp. and Bank of Indiana, instead of

Fehrenbach.  In his capacity as Chairman of the Board of both Indiana Bank Corp. and Bank of Indiana, Neese asserted full management and executive control of both entities.

.      29.      Neese brought in Jackson to serve as the Executive Vice President and/or Chief Financial Officer of Indiana Bank Corp. and Bank of Indiana.  Jackson assumed and usurped the duties of Reynolds, as those were set forth within the Offering Circular.

30.      That upon assuming their respective positions, Neese and Jackson undertook a pattern of self-dealing to the detriment of Indiana Bank Corp. and Bank of Indiana.

31.      In approximately January of 2007, Bank of Indiana purchased One Million Dollars ($1,000,000.00) of privately-issued three-year subordinated notes issued by The Estridge Companies, a home builder having its principal place of business located in Marion County, Indiana.  Said notes were underwritten by Indiana Securities, LLC, a securities firm located in Indianapolis, Indiana.

32.      At all relevant times, Neese was the principal owner and/or manager of Indiana Securities, LLC, while at the same time he was serving as Chairman of the Board of Indiana Bank Corp. and Bank of Indiana.

33.      That at the time the Estridge notes were purchased by the Bank of Indiana, The Estridge Companies was in severe financial difficulties, and that both Neese and Jackson were aware of such financial difficulties, but nevertheless hid such knowledge from Bank of Indiana stockholders and bondholders.

34.      That Neese and Jackson personally benefitted from the purchase by the Bank of Indiana of the Estridge notes.  Ultimately, Estridge Companies defaulted upon the notes and failed to repay same to the Bank of Indiana.

35.    That the actions and self-dealing of Neese and Jackson regarding the purchase of the Estridge notes by the Bank of Indiana was undertaken in concert with the other Defendants herein and constitutes bank fraud.

36.    That after becoming Chairman of the Board of the two entities, Neese hired his son to handle all of the informational technology ("IT") work to be performed on behalf of the Bank of Indiana, including back office functions.  This hiring was undertaken with the assistance of Jackson and was in concert with the other Defendants.  Neese's son did not have the experience or expertise needed to create, manage and/or maintain the IT systems needed for the operation and functioning of a National Banking Company.  The IT services provided Neese's son were woefully inadequate for a National Banking Company, failed to provide adequate security for the bank's computers, and ultimately the Bank of Indiana was required to replace said IT company at a substantial cost.

37.    While Chairman of the Board, Neese orchestrated the leasing of real estate owned by his securities company to Bank of Indiana in Indianapolis, for the use by the Bank of Indiana as its Indianapolis office.  The rental charges and costs for said rental space was far above fair market value and Neese personally profited from such rental arrangement.  These arrangements were undertaken with the approval of and in concert with the Defendants, and constitutes bank fraud.

38.    On or about August of 2007, Neese and Jackson, in concert with the other Defendants, determined to have Indiana Bank Corp. issue Fifteen Million Dollars ($15,000,000.00) in notes, and a Private Placement Memorandum was prepared and issued August 8, 2007.

7

39.     The Private Placement Memorandum stated that the purposes of said bond issue was to purchase shares of common stock of Indiana Bank Corp. held by the shareholders of German American Bank, and further to be used for working capital purposes, including, but not limited to the purchases of branches and banks as they become available.

40.     That the bonds of Indiana Bank Corp. were issued on or about November 11, 2007.  Upon receipt of said bond proceeds, Neese and Jackson had the majority thereof used by Indiana Bank Corp. to purchase Certificates of Deposit issued by Bank of Indiana at an interest rate of 5.5% per annum.  Such funds were not used for working capital purposes.

41.     That the interest rate on said Certificates of Deposit were at an unreasonably high rate not available to any customers of Bank of Indiana.  The intent was to transfer assets from the Bank of Indiana to Indiana Bank Corp., so as to improve the appearance of Indiana Bank Corp's balance sheet, while at the same time draining funds and financial resources from the Bank of Indiana, causing loses for the Bank of Indiana and thereby financially weakening same.

42.     That the investment of the bond proceeds by Indiana Bank Corp. in the Certificates of Deposit issued by Bank of Indiana was undertaken in concert with the other Defendants, and continued through at least 2011.  Such investment constituted bank fraud.

43.     That in order to secure the support and loyalty of certain Directors of Bank of Indiana and Indiana Bank Corp., Neese and Jackson arranged for certain privileged Directors to receive health insurance paid in full by Bank of Indiana and/or Indiana Bank Corp., in return for said Directors' support of Neese and Jackson.  Other Directors were excluded from said paid health insurance.  Such actions was undertaken in concert with the Directors receiving such benefits and constituted bank fraud.

44.     That the Defendants hired, retained, authorized and/or sanctioned the hiring and use of attorneys and law firms to represent the Bank of Indiana, which lawyers and/or law firms had conflicts of interest in such representation, including, but not limited to, continued representation of certain Defendants as personal counsel, while acting as Bank counsel.  Further, that the Defendants retained numerous different attorneys and law firms to represent the Bank of Indiana, from the time that it was acquired by Indiana Bank Corp. up to the time of Indiana Bank Corp's filing of bankruptcy.  Some of the attorneys and law firms retained by the Defendants lacked expertise and experience in representing a National Banking Association, to the detriment of the Bank of Indiana shareholders and bondholders.

45.     Defendants involved the Bank of Indiana in numerous lawsuits and time-consuming litigation, far beyond what would be expected of a bank of similar size and situation as the Bank of Indiana.  Defendants failed to adequately manage, supervise and control the litigation and further failed to adequately manage, supervise and control the cost of the litigation and attorneys' fees being charged to and incurred by the Bank of Indiana, all in breach of Defendants' fiduciary duties.

46.     That Neese ultimately resigned his respective positions as Chairman of the Board of Indiana Bank Corp. and Bank of Indiana in approximately 2009.  Neese was replaced as Chairman of the Board of the two entities by the Defendant, Terry Fulk.  During the time that Fulk was Chairman of the Board, he and Jackson determined to continue the payment by Bank of Indiana and/or Indiana Bank Corp. of the health insurance premiums of certain privileged Directors, so as to secure their continue support and loyalty to Fulk and Jackson.  Fulk and Jackson continued such payments well into 2010.  Such actions were undertaken in concert with

the Directors continuing to receive such benefits and constituted bank fraud.

47.     Fulk was replaced as Chairman of the Board of the two entities by the Defendant, Richard Bush in late 2010 or early 2011, while Fulk continued on as a Director.  Bush had little knowledge or expertise in the operation of a National Bank and Bank Holding Company. Throughout the term of Bush's chairmanship of both Bank of Indiana and Indiana Bank Corp., the financial condition of both entities substantially deteriorated and weakened.

48.     That during the period of Bush's Chairmanship of the two entities, two offers to purchase Indiana Bank Corp./Bank of Indiana were made and communicated to Bush.  Such offers would have provided for at least the partial return of the investments of the Stockholders and Bondholders of Bank of Indiana.

49.     Bush failed to inform the Directors of Indiana Bank Corp./Bank of Indiana, and the Stockholders and Bondholders of Indiana Bank Corp. of either of the two offers to purchase and he ignored same.

50.     That ultimately, Bush resigned his position as Chairman of the Boards of both Indiana Bank Corp. and Bank of Indiana.

51.     The Defendant Directors of the Bank of Indiana and Indiana Bank Corp., Frank D. Neese, Albert R. "Jack" Jackson, Terry Fulk, Richard Bush, Jay C. Reynolds, Jay Seeger, Merrill W. Weseman, M.D., Michael Ennis, Peter Dvorak, Dale Conrad, James Spiros, Daniel Cook, and Richard VonDerHaar, failed to keep abreast of the activities of the Bank of Indiana and Indiana Bank Corp., failed to exercise reasonable supervision and control of the Bank of Indiana and Indiana Bank Corp., and failed to supervise properly and to attend meetings of the Board of Indiana Bank Corp. and Bank of Indiana.

52.     That the individual Defendants, and each of them, failed in their duties and obligations as Directors and/or Officers to provide oversight, management and supervision of the Bank of Indiana and Indiana Bank Corp., which failures led to the bankruptcy of Indiana Bank Corp., and the forced sale of assets of Bank of Indiana.

53.     On February 9, 2013, Indiana Bank Corp. filed its Voluntary Petition of Bankruptcy under Chapter 11 of the Bankruptcy Code, in the United States Bankruptcy Court for the Southern District of Indiana.

54.     That as a result of the bankruptcy of Indiana Bank Corp., the Plaintiffs, and each of them, have incurred the loss of all or nearly all of their investments in the Stock and Bonds issued by Indiana Bank Corp.

### Count I:  Racketeer Influence and Corrupt Organizations (RICO) Violations

55.     Plaintiffs incorporate by reference herein Paragraph 1 through 54 above.

56.     The Defendants, including but not limited to Bank of Indiana, Neese, Jackson, Fulk and Bush, all knowingly formed, and were associated with, an enterprise designed to defraud Plaintiffs by means of false and fraudulent representations and pretenses, as described specifically above.

57.     The enterprise planned and executed a scheme and artifice to defraud Plaintiffs, to induce them to invest as Shareholders, Bondholders and Creditors of Indiana Bank Corp., and to further defraud them once they became Shareholders, Bondholders and Creditors of Indiana Bank Corp.

58.     That the above-described enterprise and the various described actions set forth in the preceding paragraphs constitute federal bank fraud and violates 18 U.S.C. Section 1344.

11

59.     The Defendants and each of them participated in the scheme and affairs of the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. Section 1962.

60.     Plaintiffs have been damaged by Defendants' violations of 18 U.S.C. Section 1962.

WHEREFORE, Plaintiffs, and each of them, respectfully pray that a judgment be entered in favor of Plaintiffs and against Defendants, and each of them, for violation of 18 U.S.C. Section 1962 for damages to be determined at trial, for treble damages, for reasonable attorneys' fees, costs, and for all other just and proper relief.

## Count II:  Breach of Fiduciary Duty

61.     Plaintiffs incorporate by reference herein Paragraphs 1 through 60 above.

62.     Defendants owed a fiduciary duty to the Plaintiffs, which duty included the obligation to act with reasonable care and in accordance with generally-accepted commercial banking practices.

63.     That the individual Defendants owed a duty of good faith and loyalty to the Bank of Indiana and the Plaintiffs, which duties included avoiding conflicts of interest and self-dealing. Further, the individual Defendants had a duty of candor to the Bank of Indiana and Plaintiffs to disclose all material information relevant to Bank decisions from which they may derive a personal benefit.

64.     The Defendants breached such duties and Plaintiffs were damaged as a result of such breaches.

WHEREFORE, Plaintiffs, and each of them, respectfully pray that judgment be entered in favor of Plaintiffs and against Defendants, and each of them, for the breach of Defendants'

fiduciary duties, and in an amount which will justly and fairly compensate Plaintiffs, for reasonable attorneys' fees, costs, and for all other just and proper relief.

### Count III:  Fraud/Constructive Fraud

65.     Plaintiffs incorporate by reference herein Paragraphs 1 through 64 above.

66.     Defendants made representations both in their Offering Circular and Private Placement Memorandum which were false and/or violated the duties owed by the Defendants to Plaintiffs.  Plaintiffs relied upon the misrepresentations and/or omissions resulting in damages to Plaintiffs and the gaining of an advantage by Defendants.

67.     That the misrepresentations and omissions specified above constituted constructive fraud.

WHEREFORE, Plaintiffs, and each of them, respectfully pray that judgment be entered in favor of Plaintiffs and against Defendants, and each of them in an amount which will justly and fairly compensate Plaintiffs, for reasonable attorneys' fees, costs, and for all other just and proper relief.

### Count IV: Negligent Oversight, Management, Administration and Supervision

68.     Plaintiffs incorporate by reference herein Paragraphs 1 through 67 above.

69.     That the individual Defendants, and each of them, were negligent in their management, oversight, supervision and control of the Bank of Indiana and Indiana Bank Corp.

70.     That such negligence on the part of the individual Defendants proximately caused Plaintiffs' damages.

WHEREFORE, Plaintiffs, and each of them, respectfully pray that judgment be entered in

favor of Plaintiffs and against Defendants, and each of them in an amount which will justly and fairly compensate Plaintiffs, for reasonable attorneys' fees, costs, and for all other just and proper relief.

HUNT, HASSLER, LORENZ & KONDRAS, LLP

By _____/s/ Mark D. Hassler_____
          Mark D. Hassler
          Attorney No. 8102-84

100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
hassler@huntlawfirm.net

## JURY DEMAND

Plaintiffs, Bryan K. Phillips, Michael A. Toney, Geoff Shuck, and Jessica Phillips, by their counsel, request that this matter be tried in all respects by a jury.

HUNT, HASSLER, LORENZ & KONDRAS, LLP

By _____/s/ Mark D. Hassler_____
          Mark D. Hassler
          Attorney No. 8102-84

100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
hassler@huntlawfirm.net