UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRYAN K. PHILLIPS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Cause No. 2:13-cv-412-WTL-DKL |
| ) | |
| BANK OF INDIANA, NATIONAL ) | |
| ASSOCIATION, et al., ) | |
| ) | |
| Defendants. ) | |

## ENTRY ON MOTIONS TO DISMISS

This cause is before the Court on several motions to dismiss the Plaintiffs' Second Amended Complaint (Dkt. Nos. 94, 96, 98, 100, and 101). The motions are fully briefed, and the Court, being duly advised, **GRANTS** the Defendants' motions to the extent and for the reasons set forth below.

## I.   STANDARD

The Defendants have moved to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] In reviewing a motion filed under Rule 12(b)(6), the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 638 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (omission in original). A

---

[1] To the extent that the Defendants also seek dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), those arguments fail for the reasons discussed below.

complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 638 F.3d at 334 (citations omitted).  A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 556 (2007).

## II.   PLAINTIFFS' ALLEGATIONS

The relevant facts as alleged by the Plaintiffs in the Second Amended Complaint are as follow.

### A.  The Parties

Defendant Bank of Indiana, National Association ("Bank of Indiana"), operated as a national banking association from 2006 through 2013.  Bank of Indiana was wholly owned by Indiana Bank Corp. ("IBC").  IBC filed for Chapter 11 bankruptcy on April 9, 2013, and, as a result, Bank of Indiana also closed its doors in October 2013.  Bank of Indiana ultimately sold the majority of its assets to First Farmers Bank and Trust Company of Converse, Indiana. Defendant BOI Successor Corporation "purports to be" a successor in interest to Bank of Indiana.

The Plaintiffs are, for the most part, shareholders and creditors of IBC, the entity currently in bankruptcy:

- Bryan K. Phillips owns 86,666 shares of IBC stock and $1,036,000.00 in IBC bonds.
- Michael A. Toney owns 8,333 shares of IBC stock and $60,000.00 in IBC bonds.
- Geoff Shuck owns 16,666 shares of IBC stock.
- Jessica Phillips owns $48,000 in IBC bonds.

The individual Defendants were, at various times, officers and/or directors of Bank of Indiana, IBC, and/or BOI Successor Corporation:

- Frank D. Neese was a member of IBC's board from its inception in May 2006 to February 5, 2010, and a member of Bank of Indiana's board from its inception in May 2006 to June 22, 2009, serving as both Chairman of the Board and Chief Executive Officer ("CEO").

- Albert R. Jackson, III, served on the boards of both entities from July 12, 2006, to September 16, 2009, serving as the Chief Financial Officer and the Chief Operating Officer for both entities.

- Terry Fulk served on the boards of both entities from May 2006 to January 17, 2011. He also served as the Chairman of both boards after Neese resigned from the position.

- Richard Bush served on the board of IBC from May 2006 to March 7, 2012. He also served on the board of Bank of Indiana from June 22, 2009, to October 28, 2013. Bush served as the Chairman and the CEO of both entities after Fulk resigned.

- Jay Seeger served on the board of IBC from May 2006 to February 27, 2014. He also served on the board of Bank of Indiana from January 19, 2011, to October 28, 2013. Seeger served as the Chairman of both boards and the Secretary of IBC.

- Merrill M. Wesemann, M.D., served on the boards of both entities from May 2006 to December 22, 2010.

- Michael Ennis served on the board of Bank of Indiana from May 2006 to January 25, 2010. He also served on the board of IBC from May 2006 to January 17, 2011.

- Dale Conrad served on the board of both entities from May 2006 to March 20, 2012.

- James Spiros served on the board of Bank of Indiana from January 19, 2011, to January 26, 2012. He also served on the board of IBC from May 2006 to January 26, 2012.

- Richard VonDerHaar served on the board of IBC from May 2006 to March 22, 2010. He also served on the board of Bank of Indiana from November 18, 2009, to April 21, 2010.

- Jeff Salesman was an Executive Vice President of Bank of Indiana.

- Kurt Glore was an Executive Vice President of Bank of Indiana.

- Dave Petro served on the board of IBC from July 19, 2012, to February 26, 2014. He also served on the board of Bank of Indiana from April 18, 2012, to October 28,

3

2013.  He "was and may continue to be" the Secretary, the Chief Operating Officer, and/or a director of BOI Successor Corporation.[2]

### B.  The Alleged Wrongdoing

The Plaintiffs allege that the Defendants committed the following misdeeds as officers, directors, and/or employees of Bank of Indiana and/or IBC:

- **The purchase of Estridge bonds**. In January 2007, Neese and Jackson orchestrated the purchase of $1,000,000 in privately-issued three-year subordinated notes issued by The Estridge Companies.  The notes were underwritten by Indiana Securities, LLC.  Neese and his family members are the principal owners of Indiana Securities of Indianapolis, LLC.  At the time the bonds were purchased, Estridge was in severe financial difficulties. Ultimately, Estridge defaulted on the notes.  The purchasing of the bonds personally benefited Neese and Jackson and was a conflict of interest and a breach of fiduciary and loyalty duties and also constituted bank fraud.

- **The hiring of TLI to provide IT services**.  In June 2007, Bank of Indiana hired a company called TLI to provide information technology services to Bank of Indiana and IBC.  TLI was owned and operated by Neese's children.  This was a conflict of interest and a breach of fiduciary and loyalty duties and also constituted bank fraud.

- **The lease of Neese-owned real estate to Bank of Indiana**.  While Neese served as the Chairman of both boards, he orchestrated the long-term leasing of real estate owned by him and his daughter to Bank of Indiana for the bank's Indianapolis headquarters.  He charged the bank rent that was substantially higher than its fair market rental value.  The lease was terminated in May 2010, after Neese resigned.  This was a conflict of interest and a breach of fiduciary and loyalty duties and also constituted bank fraud.

- **The issuance and investment of IBC bonds**.  In August 2007, certain of the Defendants caused IBC to issue $15,000,000 in bonds.  At that time, a Private Placement Memorandum stated that the bonds would be used to purchase shares of common stock of IBC held by shareholders of German American Bank and for working capital purposes, such as the purchase of other branches and banks.  The bonds were sold through Indiana Securities of Indianapolis, LLC, (Neese's company) and David A. Noyes & Company (VonDerHaar's employer).  At closing, both David A. Noyes & Company and Indiana Securities of Indianapolis, LLC, earned commissions.  This was a conflict of interest and a breach of fiduciary and loyalty duties and constituted bank fraud. After the bonds were sold, Neese, Jackson, and the

---

[2]Two Defendants already have been dismissed by the Plaintiffs.  Defendant Jay Reynolds was dismissed prior to the filing of the Second Amended Complaint.  Dkt. No. 81.  Defendant Daniel Cook was named in the Second Amended Complaint but subsequently dismissed.  Dkt. Nos. 91.

4

other IBC board members used the proceeds to purchase Certificates of Deposit issued by Bank of Indiana at an interest rate of 5.5% per annum. This was an unreasonably high rate not available to any customers of Bank of Indiana. The bond proceeds were not used as specified in the Private Placement Memorandum. This constituted fraud and constructive fraud.

- **Misuse of bank assets – health insurance.** Neese and Jackson arranged for certain directors to receive health insurance benefits paid for in full by Bank of Indiana and/or IBC in return for the directors' support of Neese and Jackson. Fulk continued the benefits after Neese resigned from the board in exchange for the directors' support of him. This constituted bank fraud.

- **Misuse of bank assets – hiring of attorneys/litigation**. Throughout the years, the board members hired, retained, authorized, and/or sanctioned the hiring and use of attorneys and law firms who had conflicts of interest. For example, Bank of Indiana hired Seeger's law firm to serve as counsel while Seeger was also a director. The attorneys lacked expertise and experience in representing banks. The Defendants involved Bank of Indiana in numerous lawsuits and time-consuming litigation and failed to supervise and control the litigation. These actions were a breach of the Defendants' fiduciary duties and also constituted bank fraud.

- **Releases of Neese and his family members**. After an investigation revealed that there was at least an appearance that Neese had engaged in certain improprieties, a settlement agreement and mutual release was executed by Neese, IBC, and Bank of Indiana in which the banks granted a full and complete release of all claims against Neese in return for a personal guaranty from Neese that he would pay the indebtedness owed to Bank of Indiana under the Estridge bonds if Estridge did not. In addition, Neese agreed to resign from the banks' boards. After Estridge defaulted on the bonds, Bank of Indiana filed suit against Neese, his daughter, and Indiana Securities of Indianapolis, LLC. In February 2013, Bank of Indiana and IBC entered into a second settlement agreement and mutual release with Neese. Pursuant to the agreement, IBC agreed to execute a promissory note payable to Neese in the amount of $150,000. In return, Neese agreed, among other things, to give up any interest in his IBC bonds, which had virtually no value. The releases of February 2010 and February 2013, authorized by certain of the Defendants, were a breach of their duties to Bank of Indiana, IBC, and the Plaintiffs and constituted bank fraud.

- **Bush's failures to investigate and communicate offers to purchase**. While Bush was the Chairman of both boards, two offers to purchase IBC and Bank of Indiana were communicated to him. Bush, however, failed to conduct a thorough and complete investigation into the offers and failed to inform the directors about the offers. Bush's actions constituted a breach of his duties to IBC, Bank of Indiana, and the Plaintiffs.

- **Allegations against Salesman**. As the Senior Vice President and Loan Officer of Bank of Indiana, Salesman was responsible for soliciting, processing, closing, and

5

administering commercial loans and lines of credit that were guaranteed by the Small Business Administration ("SBA"). During Salesman's tenure, he approved loans, lines of credit, and disbursements to three businesses that did not comply with the SBA's rules. When the businesses defaulted on their loans, Bank of Indiana incurred losses. Salesman's actions constituted a breach of his duties to IBC, Bank of Indiana, and the Plaintiffs.

- **Conspiracy of directors to avoid personal liability**. On at least four separate occasions, Bank of Indiana exceeded its legal lending limit. As a result, certain of the Defendants became personally liable for the bank's losses the bank incurred with regard to the loans in question. Those Defendants embarked on a pattern of conduct to avoid their personal liability for exceeding the legal lending limit. Their actions constituted bank fraud and a breach of the Defendants' fiduciary and loyalty duties.

- **IBJ Article**. In April 2012, the Indiana Business Journal published an article about Bank of Indiana. The title of the article was "Bank of Indiana on Long Journey back from Brink." Defendant Seeger was quoted in the article as saying: "At this point in time, the bank is turning around. We feel our difficulties are behind us, and we are optimistic. … But it is still going to be a long road to get the bank to where we would want it to be." Additionally, Joe Montel, who is not a Defendant is this action, was quoted as stating that the bank's management had "scrubbed the base" in 2011, setting the stage for improved performance in 2012. Defendants Seeger and Bush knew these statements to be false and that they would be relied on by IBC investors to their detriment. Thus, the statements constitute fraud.

- **Allegations against Glore**. In 2012 and 2013, Glore served as the principal collection officer for loans and lines of credit for Bank of Indiana. While Bank of Indiana was negotiating to sell some of its assets to First Farmers when it ceased operations—but before it actually did so—it was understood that there would be some loans that would not be part of that sale. Those loans were to be sold to IBC Recovery, LLC. Glore negotiated with IBC Recovery, LLC, to hire his consulting company, RKG Consulting, to provide collection services for those loans once they were sold to IBC Recovery. Glore then ceased efforts to collect on the loans on behalf of Bank of Indiana so that they would be sold to IBC Recovery and RKG Consulting would be paid to collect them. This was a violation of Glore's duties to IBC, Bank of Indiana, and the Plaintiffs and also constituted bank fraud.

### C.  The Claims Asserted

The Second Amended Complaint contains five counts. In Count I, the Plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., against Defendants Neese, Jackson, Bush, Conrad, Ennis, Fulk, Seeger, Spiros, VonDerHaar, Wesemann, and Bank of Indiana relating to the acts of bank fraud they are alleged

to have committed.  In Count II, the Plaintiffs assert a RICO claim against Defendants Bush, Conrad, Ennis, Fulk, Jackson, Neese, Petro, Seeger, Spiros, VonDerHaar, Wesemann, Bank of Indiana, and BOI Successor Corporation relating to their alleged scheme to avoid personal liability for allowing the bank to exceed its legal lending limit.  In Count III, the Plaintiffs allege that the Defendants owed the Plaintiffs fiduciary duties, duties of good faith and loyalty, the duty to act with reasonable care, the duty of candor, and the duty to avoid conflicts of interest and self-dealing.  The Plaintiffs allege that each of the Defendants breached these duties in various ways.  In Count IV, the Plaintiffs assert claims of fraud and constructive fraud against Defendants Neese, Jackson, Bush, Conrad, Ennis, Fulk, Seeger, Spiros, VonDerHaar, and Wesemann.  Finally, in Count V, the Plaintiffs allege that the Defendants were willfully, recklessly and/or grossly negligent in their management, oversight, supervision and control of Bank of Indiana and IBC.

## III.  **DISCUSSION**

Each of the individual Defendants[3] has moved to dismiss each of the claims in the Plaintiffs' Second Amended Complaint.  Two groups of Defendants—Ennis, Fulk, Jackson, Neese, and Wesemann (hereinafter collectively referred to as the "Ennis Defendants") and Bush, Conrad, and Spiros—have filed substantive briefs in support of their motions.  The remaining individual Defendants—Petro, Salesman, VonDerHaar, Seeger and Glore—have joined in the others' motions.  The Defendants' arguments are discussed, in turn, below.

---

[3]Bank of Indiana and BOI Successor Corporation have not yet appeared or responded to the complaint.  However, "[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related." *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993).  Such is the case here.

### A. RICO Claims (Counts I and II)

The Defendants argue that the Plaintiffs have no standing to bring their RICO claims because such claims belong exclusively to Bank of Indiana or IBC. Their argument is based on the general rule that "only persons injured directly by the defendant's misconduct may recover under RICO." *Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 733 (7th Cir. 2014). The Defendants are incorrect that this is a standing issue.

> Until the Supreme Court's decision in *Lexmark International, Inc. v. Static Control Components, Inc.,* 134 S.Ct. 1377, (2014), parties usually discussed this kind of limitation under the rubric of statutory standing.[4] In *Lexmark*, however, the Supreme Court disapproved of the idea of "prudential" standing. Properly understood, the Court said, whether a plaintiff may sue "is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." 134 S.Ct. at 1387.

*Id.* at 733-34. The fact that the injuries the Plaintiffs assert in their RICO claims are indirect does not mean that they lack standing to bring those claims.

However, while *Lexmark* jettisoned the concept of "prudential standing" and therefore changed the label used to describe the analysis of whether a plaintiff "falls within the class of

---

[4]The Ennis Defendants argue that the Court lacks subject matter jurisdiction over this case because the Plaintiffs lack standing. This argument lacked merit even prior to *Lexmark*. *See, e.g.*, *Korte v. Sebelius*, 735 F.3d 654, 668 (7th Cir. 2013), *cert. denied sub nom. Burwell v. Korte*, 134 S. Ct. 2903 (2014) ("Like other rules of third-party standing, however, the shareholder-standing rule is a prudential limitation and does not affect the court's authority to hear the case. Prudential-standing doctrine is not jurisdictional in the sense that Article III standing is.") (citations and internal quotation marks omitted); *see also MainStreet Organization of Realtors v. Calumet City,* 505 F.3d 742, 745 (The "nonconstitutional, entirely judge-made" doctrine of prudential standing prohibits suits "in which the injury on which the plaintiff founds his suit is derivative from the injury suffered by the defendant's immediate victim" and "precludes the federal courts from exercising jurisdiction over some types of case [sic] that Article III would not forbid the court to adjudicate."). The Court also notes that the Ennis Defendants ask the Court to dismiss the complaint with prejudice because the Plaintiffs lack standing; however, a dismissal for lack of standing is without prejudice.

plaintiff whom Congress has authorized to sue under the [relevant] statute," it did not change the longstanding law with regard to who may bring a suit under RICO.

> Courts have long held that a plaintiff must prove more than mere cause-in-fact, namely proximate cause, to support a cause of action under RICO. In determining whether proximate cause exists, courts historically have held that "[t]he general tendency of the law, in regard to damages at least, is not to go beyond the first step." *Southern Pacific Co. v. Darnell-Taenzer Lumber Co.,* 245 U.S. 531, 533, 38 S.Ct. 186, 186, 62 L.Ed. 451 (1918) (Holmes, J.). "Thus, a plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, ----, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992).

*Mendelovitz v. Vosicky*, 40 F.3d 182, 184 (7th Cir. 1994). Claims by shareholders of a corporation that arise out actions that led to the diminution of the corporation's stock value are such claims; the shareholders' claims in such cases flow merely from the misfortunes visited upon the corporation. In other words, the shareholders' claims are derivative of the corporation's claims and may not be brought directly by the shareholders.[5] *See, e.g.*, *Gagan v. Am. Cablevision, Inc.*, 77 F.3d 951, 959 (7th Cir. 1996) (collecting cases that have held that "[w]here the shareholder's injury resulted directly from an injury to the corporation, but only indirectly from the harm the wrongdoer wreaked upon the corporation, the RICO claim belongs to the corporation, and not the shareholder") (citing *Sears v. Likens,* 912 F.2d 889, 892 (7th Cir. 1990); *Flynn v. Merrick,* 881 F.2d 446, 449 (7th Cir. 1989); and *Rylewicz v. Beaton Services, Ltd.,* 888 F.2d 1175, 1178–79 (7th Cir. 1989) (RICO suits by individual shareholders to recover for injuries to the corporation are impermissible.)).[6]

---

[5] The same analysis applies with regard to the Plaintiffs' RICO claims based upon their status as bondholders.

[6] The Plaintiffs also argue that they should be permitted to bring a direct action because the claims have been abandoned by the bankruptcy estate and the individual Defendants have "done everything they can to insulate themselves from derivative liability to IBC in this matter, while simultaneously attempting to prevent Plaintiffs from prosecuting their direct claims against

This is just such a case. The Plaintiffs argue that they nonetheless should be permitted bring their RICO claims because, under Indiana law,

> [i]n the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

*Barth v. Barth*, 659 N.E.2d 559, 562 (Ind. 1995) (quoting A.L.I., *Principles of Corporate Governance* § 7.01(d)). The Court disagrees that Indiana law saves the Plaintiffs' RICO claim in this case, for several reasons.

As an initial matter, it is not clear to the Court that this principle of state law is relevant to the issue of whether the Plaintiffs may bring a claim under federal law. *See Illinois ex rel. Ryan v. Brown*, 227 F.3d 1042, 1045 (7th Cir. 2000) ("'The mere fact that *Illinois courts* would recognize the plaintiff's standing to bring such an action, however, does not mean that he has standing to bring a *federal action* arising from the same occurrence. The plaintiff's standing to assert a federally created right is not controlled by state law.'") (quoting *O'Donnell v. Kusper*, 602 F. Supp. 619 (N.D. Ill. 1985)) (emphasis in original). Further, the Court doubts seriously that IBC qualifies as a closely held corporation under Indiana law in any event, given the number of shareholders it appears to have had (over 100).

The Court need not resolve that issue, however, because even assuming that it is a closely held corporation, the Court would not exercise its discretion to permit the Plaintiffs to bring a

---

Defendants by asserting that the Plaintiffs' claims are solely assets of IBC and/or the bankruptcy estate." Dkt. No. 105, Plaintiffs' Brief at 16. These arguments are irrelevant to whether the Plaintiffs can bring a *direct*, rather than a derivative, action asserting a RICO claim based upon a derivative injury.

direct suit under RICO, given the fact that IBC is in bankruptcy and has shareholders and creditors other than the Plaintiffs whose interests would be adversely affected if the Plaintiffs were allowed to proceed with this case.[7] *See Barth*, 659 N.E.2d at 562 ("[I]t is important to keep in mind that the principles which gave rise to the rule requiring derivative actions will sometimes be present even in litigation involving closely-held corporations. For example, because a corporate recovery in a derivative action will benefit creditors while a direct recovery by a shareholder will not, the protection of creditors principle could well be implicated in a shareholder suit against a closely-held corporation with debt."). Because permitting the Plaintiffs to proceed with their RICO claim as a direct action would materially prejudice the interests of IBC's other creditors and interfere with the fair distribution of any recovery among all interested persons, to the extent that Indiana law gives the Court discretion with regard to the RICO claims, the Court does not find that permitting a direct action is appropriate as to those claims.

## B.  Remaining Claims

The Defendants also move to dismiss the Plaintiffs' remaining claims, which all are premised on state law. The Court's jurisdiction over the Plaintiffs' state law claims is based on 28 U.S.C. ' 1367, which provides for the exercise of supplemental jurisdiction over claims based on state law that are closely related to the federal claims in a case. However, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Products N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) (citation omitted). "The presumption is

---

[7]The Plaintiffs assert that "a very significant portion" of IBC's liabilities are owned by the Plaintiffs, the Defendants, or "other corporate insiders"; however, that means that the remaining portion of those liabilities are owned by others who are not involved with this suit.

11

rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *Id.* (citations and internal quotation marks omitted). The Seventh Circuit has

> identified certain circumstances that may displace the presumption, namely: (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (citation omitted). None of those exceptions apply here, and whether any of the Plaintiffs' state law claims can be pursued as direct actions under Indiana law is a question better answered by an Indiana court. Accordingly, the Court declines to exercise supplemental jurisdiction over the state law claims asserted in the Plaintiffs' Second Amended Complaint.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Defendants' motions to dismiss are **GRANTED** as to the Plaintiffs' RICO claims (Counts I and II) and those claims are **DISMISSED WITH PREJUDICE** as to all of the Defendants. The Court declines to exercise supplemental jurisdiction over the Plaintiffs' remaining claims; they are all **DISMISSED WITHOUT PREJUDICE**.

SO ORDERED: 8/26/15

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification